**SMITH v. PETROLEUM CASUALTY CO.**

No. 9895.

Court of Civil Appeals of Texas. Galveston. April 27, 1934.

Rehearing Denied June 14, 1934.

.J. S. Bracewell and Quinton Wright, both of Houston, for appellant.

K. W. Gilmore, of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellant to recover from appellee insurance company compensation claimed by appellant to be due him under the workmen's compensation statute of this state (Vernon's Ann. Civ. St. arts. 8306–8309). The following is the substance of the allegations in plaintiff's pleadings:

. Appellant, while engaged in the work of his employment by the Humble Oil & Refining Company was accidentally injured on or about November 1, 1930. The Humble Company, in compliance with the provisions of the Employers' Liability Act of this state, held a policy of insurance issued by appellee for the protection of the employees of the company, as required by said act. This policy was in full force and effect at the time appellant was injured. Some time subsequent to his injury, appellant employed an attorney for the prosecution of his claim for compensation. This attorney gave the required notice of appellant's injury, and claim for compensation, and forwarded the notice to appellee and the Industrial Accident Board. After some negotiations with representatives of appellee, appellant, upon the recommendation of his attorney, on January 19, 1931, signed a compromise settlement agreement by which he was to be paid the sum of $250 as full compensation for his injuries. After reflection upon this agreement for a day or more, he felt that the settlement was inadequate, and on the morning of January 20, 1931, went to the office of his lawyer and informed him that he would not abide by the agreement, and appellee was immediately so notified by appellant's attorney.

Notwithstanding appellant's repudiation of the compromise settlement, it was forwarded to the Industrial Accident Board on January 20, 1931, and on the following day, January 21, 1931, one member of the board placed the notation "O. K." on the agreement to evidence his approval thereof, and on the 22d of January the clerk of the board notified both parties that the settlement had been approved.

The attorney first consulted by appellant withdrew from the case after appellant repudiated the compromise settlement, and appellant procured another attorney, who, on January 22d, notified the board that appellant had repudiated the settlement agreement and asked that appellant's claim be set for hearing on its merits. In answer to this request the board set the claim for hearing on February 3, 1931, for the purpose of determining whether the compromise settlement should be approved and determining the extent of appellant's injuries and the liability of appellee. A hearing was had by the board on the date set, and on the 11th day of February, 1931, the board made and entered its award approving the settlement for $250. From this award the appellant in due time prosecuted an appeal to the court below.

The amended petition upon which the cause was tried contains the following allegations:

"That on or about the 1st day of November, 1930, plaintiff was employed and was working on an oil well rig named Minnetex No. 4 at about 11:00 o'clock a. m., and was assisting several other employees of said company in moving a giant electric motor from one position to another; plaintiff was assisting in moving said motor with an iron bar when, without any negligence on the part of plaintiff, the weight of said motor was thrown against plaintiff, causing plaintiff to be jerked and thrown about, causing a severe strain and wrench on plaintiff's back and internal organs; that plaintiff did not

642

think his injuries were very serious at that time and continued to try to work for the balance of the day though suffering from said injuries; that plaintiff's back was bruised, strained, and wrenched, and plaintiff was unable to work any more and was confined to his bed all the next day and that two days later the said injury became greatly aggravated, plaintiff falling and becoming unconscious, and said injury caused and necessitated a major abdominal operation while plaintiff was unable to get in touch with the company physician and plaintiff was operated on at the Emergency Clinic in Houston, Harris County, Texas; that in addition to plaintiff's back being wrenched, the membranes, tendons and ligaments surrounding and protecting his appendix were lacerated and torn loose, causing and developing appendicitis and such injuries were of such a nature that the same could not be cured or corrected by an operation for appendicitis but said operation was necessary in order to save plaintiff's life; that he has never recovered from the effects thereof but the muscles, membranes, and tissues surrounding said appendix are still torn and lacerated and the nerves of his spinal column and muscles are exposed, and plaintiff has continuously since said injury suffered intense pain in his back and stomach in the region of said injury and by reason thereof has on several occasions become unconscious and on or about the ―――― day of August, 1931, fell upon the streets in the City of Houston and was carried to the hospital where he remained a week; that his injuries are such as to totally and permanently incapacitate him from following his usual vocation and duties or earning any money or compensation of any kind or character and he is now totally and permanently disabled within the purview of the workmen's compensation act of this state.

"That said plaintiff prior to the date of said accident was a strong and robust man, vigorous health, and in the prime of life, and capable of doing, and did do and perform manual labor and had never had any serious injuries; that plaintiff is a man who does not have very much education and is forced to do manual labor for a living; that said injury has destroyed his earning capacity and that he is permanently and totally incapacitated and that the injuries complained of by him are the direct and proximate result of said accident and injury aforesaid."

This petition further alleges: That within thirty days after plaintiff received his injuries he called upon the defendant Petroleum Company and requested it to begin paying him the compensation to which he was entitled under the statute and which appellant by its policy of insurance issued to the Humble Company was obligated to pay; that defendant recognized its liability to plaintiff under its insurance policy and promised to begin paying his weekly compensation on the following week, but that, notwithstanding said agreement and promise on defendant's part, it failed and refused to pay such compensation; that plaintiff then employed an attorney who filed the claim with the Industrial Accident Board as before stated.

"That within two or three days after said claim and notice were executed, plaintiff, upon advice of his said attorney, and while he was in great pain and mental suffering, signed a compromise settlement agreement which had theretofore been prepared by defendant herein without plaintiff's knowledge or consent, under the terms of which agreement plaintiff would receive the sum of $250.00 for his injuries; that plaintiff by reason of his mental and physical condition at that time did not read said document and if he had read the same he was in such mental and physical condition that he could not properly appreciate and understand the nature of his act in signing said document and did not read nor know the contents of the same; that said contract by its terms was not to be effective until approved by the Industrial Accident Board; that plaintiff thought at the time he signed the same that it contemplated that defendant should pay for said operation and hospital fees, amounting to $250 or more, and that he would be paid $250.00 compensation besides said doctor's bill and hospital hire."

The petition then alleges the facts as to the signing and subsequent repudiation by plaintiff of the compromise agreement, and the action by the Industrial Accident Board thereon, which we have before stated. The prayer of the petition is that "said compromise agreement and said final ruling, decision and award of the Industrial Accident Board approving said compromise be set aside, vacated, annulled and held for naught, that upon the trial of this cause, plaintiff have a judgment against the defendant for compensation for 401 weeks, beginning the 1st day of November, 1929, at the rate of $15.58 per week, together with all interest on all past due installments from the date of their respective maturities at six per cent. per annum, to be paid in a lump sum, and that the said attorney be allowed one-third of any amount recovered herein or such other sum as the court

may deem fit and proper, and for costs of suit, and for such other and further relief, both general and special, in law and in equity, as he may be justly entitled to receive."

The defendant answered first by a plea in abatement on the ground that plaintiff's petition shows upon its face that the claim against defendant had been compromised and settled by agreement of the parties by which defendant would pay plaintiff the sum of $250 in full settlement of his claim, and that such compromise agreement was approved by the Industrial Accident Board by order of the board made and entered on February 11, 1931, and said compromise agreement is now in full force and effect; that plaintiff's petition does not comply with the provision of the statute with reference to setting aside compromise agreements and does not allege any sufficient grounds for such relief.

Appellee further answered by a general denial, and specially denied plaintiff's allegation that he did not understand the compromise agreement, and averred that the agreement was executed by plaintiff without talking to or consulting any one connected with the defendant, and pleaded said compromise agreement in bar of plaintiff's claim to any further compensation.

Appellee's plea in abatement was overruled by the trial court.

The cause was submitted to a jury upon two issues, and upon return of the verdict upon the issues submitted judgment was rendered in favor of defendant, limiting plaintiff's recovery to the $250 deposited in the registry of the court by defendant and further adjudging and decreeing in favor of defendant on its plea in bar, "establishing and approving the award of the Industrial Accident Board * * * and said award and agreement are hereby in all things established, approved and confirmed, and the defendant having complied therewith by paying said money into the Registry of the Court, it is completely and finally discharged of any further and other liability to the plaintiff and said compromise agreement is in all things approved, confirmed and established."

While the evidence upon the issue of appellant's injury as alleged by him, and the extent, duration, and seriousness of the alleged injury, is conflicting, the evidence introduced is sufficient to sustain a finding that appellant was injured under the circumstances and in the way and manner alleged in his petition, and that as a result of such injury he is totally disabled from the performance of any hard labor requiring physical strength and endurance.

The evidence is also conflicting on the issue of appellant's understanding and appreciation of the nature and purpose of the agreement at the time he signed it, and, if the issue was properly submitted, a finding by the jury that he did fully understand the agreement at the time he signed should be sustained.

The undisputed evidence shows that plaintiff repudiated the agreement and so informed the Industrial Accident Board several weeks prior to the approval of the agreement by the board, acting in its official capacity in the manner required by law.

Upon this state of the evidence the only issues submitted to the jury were:

"Special Issue No. 1. On what date do you find, from a preponderance of the evidence, that the defendant Petroleum Casualty Company had notice that the Plaintiff, E. A. Smith, had repudiated the compromise agreement entered into January 15th, 1931?

"Answer by giving the date, as you find the facts to be.

"Special Issue No. 2. Do you find from a preponderance of the evidence under all the facts and circumstances in evidence before you that said compromise agreement should be approved?

"Answer 'We do' or 'we do not' as you find the facts to be."

In answer to the first question, the jury responded, "January 20, 1931," and answered the second question, "We do."

■■ Under an appropriate assignment and proposition the appellant first assails the judgment on the ground that the compromise settlement and agreement having been repudiated by the appellant, and notice of such repudiation given to the Industrial Accident Board before its approval by the board, the agreement never became a legally binding contract, and the board was without authority to thereafter approve the agreement, and the trial court was not authorized to submit to the jury the issue of the validity of the agreement.

We think these contentions of appellant should be sustained. The compromise agreement could not become effective until approved by the board. Section 12 of article 8307 provides: "Where the liability of the association or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established, the Board

may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

It seems plain to us that under this provision of the statute, neither party to such agreement could assert any contractual right against the other prior to the approval of the agreement by the board, and that the agreement prior to such approval was nothing more than an offer of settlement by one party and an acceptance by the other, subject to the approval of the board. There was no independent consideration for the contract to make it binding upon either party. If this is a correct interpretation of the agreement and its force and effect, it seems to necessarily follow that either party could, on notice to the other and to the Accident Board, withdraw his consent to the agreement at any time before the board, acting as such, formally approved the agreement.

The order of the Accident Board made and entered on February 11, 1931, shows on its face that there had been no final approval of the agreement subsequent to the date on which the order was made and entered, but that the board had signified its intention to approve the settlement on January 21, 1931, when the agreement was presented to it. The undisputed evidence shows that the board was notified on January 22 or 23, 1931, that appellant would not abide by the agreement.

Upon this state of the evidence there can be no doubt of the fact that the board had not approved the agreement before it was notified by appellant that he had withdrawn his consent to the settlement stated in the agreement.

The primary purpose of our workmen's compensation statute is the protection of workmen against damages caused by accidental injury incurred in the performance of the duties of their employment. The Industrial Accident Board aids in carrying out this primary purpose of the act, and for this reason the statute before quoted expressly provides, in substance, that no compromise agreement between an insurance company guaranteeing the compensation of a workman employed by a subscriber under the statute shall be enforced unless approved by the board.

In this view of the statute, we think the statement of appellant's counsel in his argument presented in his brief, that the filing of the compromise agreement with the Accident Board was in effect nothing more than the filing of a joint pleading asking for settlement of the claim in accordance with the agreement, and that either party could at any time before final action by the board be permitted to withdraw from the request made in the pleading, should be sustained.

If, however, we should be mistaken in this construction of the statute, the second question propounded to the jury in no sense presents a special fact issue, but a general issue of mixed fact and law. The appellant objected to this question on this ground, and requested the court to submit all of the issues as to the injury to appellant, its extent, duration, and seriousness.

Unless it can be said as a matter of law under the facts of this case that appellant is bound by the compromise agreement regardless of whether the liability of the insurance company or the extent of appellant's injuries "is uncertain, indefinite, or incapable of being satisfactorily established," these issues should have been submitted to the jury.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.